IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOSHUA PAUL BARNHILL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CR 123-012 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, proceeding *pro se*, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2255 motion be **DENIED**, (doc. no. 49), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Indictment

On February 8, 2023, the grand jury in the Southern District of Georgia returned a two-count indictment against Petitioner charging him with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  (Doc. no. 1.)  For the distribution charge, Petitioner faced a statutory maximum of not less than five years but not more than twenty years imprisonment, not more than a $250,000 fine, not less than five years supervised release but not more than life, forfeiture of all forfeitable assets, a special assessment of $100,

an assessment per count pursuant to 18 U.S.C. § 3014, an assessment per count pursuant to 18 U.S.C. § 2259A, registration as a sex offender, and mandatory restitution. (Doc. no. 2.) For the possession of child pornography charge, Petitioner faced a statutory maximum of not more than twenty years imprisonment, not more than a $250,000 fine, not less than five years supervised release but not more than life, forfeiture of all forfeitable assets, a special assessment of $100, an assessment per count pursuant to 18 U.S.C. § 3014, an assessment per count pursuant to 18 U.S.C. § 2259A, registration as a sex offender, and mandatory restitution. (Id.) Petitioner retained attorney Grant K. Usry. (Doc. nos. 6, 7.)

### B.    Guilty Plea

On May 31, 2023, Petitioner appeared with counsel and entered a guilty plea to the distribution of child pornography charge. (Doc. nos. 29-31.) The written plea agreement identified the elements of the offense as: "the Defendant knowingly distributed an item or items of child pornography; (2) the item[s] of child pornography had been transported, shipped, or mailed in interstate or foreign commerce including by computer; and (3) when the Defendant distributed the item[s], the Defendant believed the item[s] contained child pornography." (Doc. no. 31, p. 1.) In exchange for the guilty plea, the government agreed to dismiss the possession charge at sentencing. (Id. at 4.) Petitioner's plea agreement contained the following factual basis for his guilty plea:

> On or about November 10, 2021, in Columbia County, within the Southern District of Georgia, the defendant, Joshua Paul Barnhill, did knowingly distribute child pornography and any material that contains child pornography, as defined in Title 18, United States Code, Section 2256(8), that was shipped and transported in and affected interstate and foreign commerce by any means, including by computer; and that was shipped and transported using any means and facility of interstate and foreign commerce, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b).

(Id. at 3.)  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  (Id. at 10.)

By signing the Plea Agreement, Petitioner also "entirely waive[d] [his] right to a direct appeal of [his] conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  (Id. at 6.).  Absent those conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  (Id. at 6.)  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  (Id.)  Moreover, Petitioner agreed he read and carefully reviewed the Plea Agreement with his attorney, understood each provision, and voluntarily agreed to it.  (Id. at 10.)  By signing the Plea Agreement, Petitioner additionally attested counsel had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by [his] attorney."  (Id. at 8.)

At the change of plea hearing, United States District Judge Dudley H. Bowen, Jr., began by asking Petitioner preliminary questions.  (Doc. no. 47, pp. 3-6.)  Petitioner replied, "Yes, sir" when asked whether he was entirely satisfied with his lawyers' handling of the case.  (Id. at 5.)  Judge Bowen reviewed the details of the Plea Agreement and asked if Petitioner understood the charge contained in the Indictment to which Petitioner would be pleading guilty.  (Id. at 6.)  Petitioner confirmed he understood.  (Id.)  Judge Bowen explained the possible maximum statutory penalty, and Petitioner affirmed he understood.  (Id.)

Judge Bowen also explained the rights Petitioner would be waiving by pleading guilty.  (Id. at 7-8.)  Among the rights explained, Judge Bowen reviewed the right to trial by jury, the

presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to be present and confront witnesses, and the right to remain silent. (Id.) Petitioner affirmed he clearly understood those rights. (Id. at 8.) Judge Bowen asked if anyone forced, threatened, or pressured Petitioner into pleading guilty, and Petitioner responded, "No, sir." (Id.)

Judge Bowen reviewed the terms of the Plea Agreement and confirmed Petitioner understood the Plea Agreement. (Id. at 9-10.) Judge Bowen also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. (Id.) Judge Bowen then asked Petitioner whether anyone had given him a promise or other prediction about what his sentence would be. (Id. at 10.) Petitioner responded, "No, sir." (Id.)

Next, Judge Bowen heard a factual basis for the guilty plea from Special Agent Farrah Rajabi with the Federal Bureau of Investigation. (Id. at 11-15.) Agent Rajabi testified that the case initiated from a cyber-tip received from the Kik Messenger application ("Kik") in November 2021. (Id. at 11.) She explained messages and images sent through Kik travel over the internet and therefore through interstate commerce. (Id. at 12.) Agent Rajabi relayed that the investigation into the cyber-tip revealed a Kik account created and used by Petitioner, in which he sent an approximately minute-and-a-half video containing child sexual abuse material ("CSAM") to other Kik accounts using the private chat feature. (Id.) Agent Rajabi personally reviewed the video and confirmed it depicted child pornography. (Id. at 12-13.)

Agent Rajabi also described the executed search warrant of Petitioner's residence in Columbia County in October 2022, during which law enforcement seized Petitioner's iPhone. (Id. at 13-14.) Forensic analysis revealed over five hundred CSAM images, some of which involved prepubescent children. (Id.) Agent Rajabi also testified that Petitioner admitted

possessing and sending CSAM through the Kik application during an interview with law enforcement. (Id. at 14.) Specifically, she stated that Petitioner told law enforcement "if he didn't have an interest in the material he would not have sent it out and he said that he only ever sent it via the Kik [application] and he had viewed [CSAM] within the past year." (Id.) Agent Rajabi concluded her testimony by confirming the CSAM distributed to other Kik users by Petitioner was sent within the Southern District of Georgia. (Id.)

Judge Bowen then asked Petitioner if he disagreed with anything to which Agent Rajabi testified, and Petitioner responded he didn't "recall ever admitting to sending child pornography over the Kik app during that interview." (Id. at 15.) Judge Bowen then inquired if there was anything else Petitioner disagreed with, and Petitioner stated, "[h]er summarization doesn't really sound like what I recall saying, but I would honestly have to read the transcripts or hear the interview to know for sure." (Id.) Judge Bowen explained he was trying to understand whether Petitioner did not remember what he said in the interview, or whether he disagreed with what Agent Rajabi testified to him saying. (Id. at 15-16.) After being directly asked by Judge Bowen, Petitioner stated "I simply . . . don't recall it being [said] that way" but "[i]t may have happened exactly how [Agent Rajabi] said." (Id. at 16.) Judge Bowen then asked how Petitioner wanted to resolve his case, and he responded "with a plea [to the distribution charge], Your Honor." (Id.) Judge Bowen then pressed Petitioner further and asked whether he understood that a distribution charge "doesn't mean simply looking [at CSAM]" but instead means "sending, receiving [CSAM]." (Id.) Petitioner again stated he wished to plead guilty, and he stated he was in fact guilty of distribution of child pornography. (Id. at 17.) Mr. Usry, Petitioner's counsel, confirmed there was no need for Petitioner to review the interview transcript because "his beef is simply with the wording as he recalls it." (Id.)

After additional questioning by Judge Bowen, Petitioner again stated he wanted to take the plea deal, and that he was guilty of the distribution charge. (Id. at 17-18.)  Judge Bowen then accepted Petitioner's guilty plea. (Id. at 18.)

## C.    Sentencing

The United States Probation Office prepared the Presentence Investigation Report (PSI), which provided for a Total Offense level of thirty-four, a Criminal History Category of I, and a Guidelines imprisonment range of 151 to 188 months.  PSI ¶¶ 35, 36, 65.  The PSI described the offense conduct, including a May 2022 cyber-tip pertaining to a one-minute thirty-two second video Petitioner sent on November 10, 2021, which depicted "a white female pre-pubescent to early pubescent child masturbating with a black curling iron attachment, with her vagina exposed to the camera."  PSI ¶ 5.  The PSI also discussed that 565 images and 1 video depicting CSAM were located on Petitioner's smartphone during a November 15, 2022 forensic analysis.  PSI ¶¶ 13, 14.  Petitioner was also attributed with possessing three CSAM videos on October 19, 2022, which were located in his group messages on another social media application during the October 2022 search of his residence.  PSI ¶ 14.  Based on the foregoing, the PSI attributed Petitioner with possessing a total of 940 images of CSAM for purposes of calculating his offense level.  PSI ¶ 14.  The PSI explained that pursuant to U.S.S.G. § 2G2.2, Application Note (6)(B)(ii), each video is considered to have 75 images.  PSI ¶ 14.

The PSI included several specific offense characteristic enhancements.  PSI ¶¶ 23-25. As is relevant to the instant § 2255 motion, Petitioner received a four-level increase pursuant to U.S.S.G. § 2G2.2(b)(4) "[b]ecause the offense involved material that portrays masochistic conduct and sexual abuse or exploitation of an infant or toddler."  PSI ¶ 25.  He also received a five-level increase pursuant to U.S.S.G. § 2G2.2(b)(7)(B) because he "possessed 600 or more

images," based on the 565 photographs and five videos described in the offense conduct section. PSI ¶ 27. The statutory maximum term of imprisonment for the offense of distribution of child pornography was twenty years. Doc. no. 2, p. 1; PSI ¶ 64.

Neither the government nor the defense filed any objections to the PSI. (Doc. no. 48 ("Sent. Tr."), p. 3.) Notably, however, Mr. Usry filed a Sentencing Memorandum presenting mitigating information about Petitioner, including his acceptance of responsibility, strong family ties, educational background, and military service. (See doc. no. 40.) In this Memorandum, Mr. Usry also detailed Petitioner's goal of participating in counseling and education services while confined to help "diagnose and treat the behavioral defects" leading to his conviction. (Id. at 3-4.) Ultimately, Mr. Usry urged the Court to "fashion an appropriate sentence that is sufficient but not greater than necessary to accomplish the purposes listed in 18 U.S.C. § 3553(a) . . . ." (Id. at 4.)

At the sentencing hearing held on September 20, 2023, Judge Bowen asked whether Petitioner had read and discussed the PSI with Mr. Usry, and Petitioner responded in the affirmative. Sent. Tr. 3. Mr. Usry then confirmed he did not have any objections to the PSI or any "concerns" about the advisory guideline range. Sent. Tr. 3. Next, Mr. Usry argued in favor of Petitioner receiving a sentence on the low end of the Guideline range and highlighted relevant portions of the Sentencing Memorandum throughout to his oral presentation. Sent. Tr. 4-9. Mr. Usry noted none of his arguments were meant to "excuse" Petitioner's behavior, and that Petitioner understood the "gravity of the situation" and "accepts responsibility for his conduct." Sent. Tr. 5-6. Mr. Usry argued Petitioner had a lack of criminal history and had shown steady progression in his military career. Sent. Tr. 6-7. Mr. Usry contended Petitioner's history of self-improvement in his professional life demonstrates he would apply these same

7

skills to address the "behavior defects" leading to his conviction through his participation in counseling and therapy while incarcerated.  Sent. Tr. 6-9.

After Mr. Usry's remarks, Petitioner read his own written statement into the record:

> Your Honor, I'm better than this. I owe it to my family and the people who never lost faith in me to prove it. I don't know what my future holds, but the actions that brought me here have no part in it and I pray that the people I care about most still do. I'm going to take advantage of every opportunity, program, and professional afforded to me, but I am never going to be satisfied that I have done enough. I just ask to be provided the tools and I'll do the work. Thank you.

Sent. Tr. 10.

The government then argued for a sentence within the guideline range.  Sent. Tr. 11-12.  The government first pointed out that Petitioner was actively distributing CSAM material to the online black market, which in turn furthers the demand for CSAM content and repeatedly exploits children.  Sent. Tr. 11.  The government also highlighted that Petitioner possessed CSAM material involving infants and toddlers, as well as more than 900 CSAM images for sentencing guideline purposes.  Sent. Tr. 12.  The government concluded by arguing Petitioner's history of military service cut against him because "while he was distributing child pornography he was actively recruiting young people . . . ."  Sent. Tr. 12.

After hearing from counsel, Petitioner, and the government, Judge Bowen imposed a total sentence of 151 months in prison to be served concurrently with any sentence imposed in the pending state action in Columbia County, Georgia.  Sent. Tr. 16-17.  Judge Bowen also sentenced Petitioner to fifteen years of supervised release.  Sent. Tr. 17.  In imposing Petitioner's sentence, Judge Bowen noted he had imposed sentences before the Guidelines existed and explained "[t]his is one of those times" where the Guidelines were "very helpful and provide a measure of guidance and comfort to the Court."  Sent. Tr. 14.

8

In a declaration submitted by Mr. Usry under penalty of perjury, which is attached as an exhibit to Respondent's response, Mr. Usry avers he discussed "each and every one of [Petitioner's] concerns" before sentencing and together they "agreed upon the strategy taken to forgo filing potential objections, or to make specific arguments at sentencing." (Doc. no. 59-3, ¶ 2, "Usry Decl.")

### D.   § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following ineffective assistance of trial counsel claims:

(1)   Trial counsel was ineffective at sentencing for failing to object to the "sadistic/masochistic" enhancement;

(2)   Trial counsel was ineffective at sentencing for failing to object to the numerosity of images enhancement; and

(3)   Trial counsel was ineffective at sentencing for not requesting "a fair and reasonable sentence that would not create a sentencing disparity[.]"

(See generally doc. no. 49; see also doc. no. 71.)

For relief, Petitioner requests the Court vacate his sentence and re-sentence him. (Doc. no. 49, p. 56.) Respondent filed a response in opposition to Petitioner's motion, (doc. no. 59), and Petitioner filed a reply in support, (doc. no. 71).

## II.   DISCUSSION

### A.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per curiam). Under the first prong, Petitioner must show that "counsel's representation fell below an

objective standard of reasonableness." Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690).  "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

"Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel." Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*), *partially overruled on other grounds*, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997).  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).  Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular

facts or defenses.  Id. at 1317.  Rather, "Strickland permits attorneys to choose between viable avenues of defense, and attorneys are not ineffective for making a reasonable choice to take one avenue to the exclusion of another, or for selecting a reasonable course without considering some other, equally reasonable course.  LeCroy v. United States, 739 F.3d 1297, 1313 (11th Cir. 2014).  That is, counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland, 466 U.S. at 689. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies

. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover, "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client." United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (citing Strickland, 466 U.S. at 692-93).

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

> **1.  Petitioner Is Not Entitled to Relief on Ground 1 Because Mr. Usry Was Not Ineffective for Failing to Object to the Sadomasochistic Sentencing Enhancement**

In Ground 1, Petitioner alleges Mr. Usry was ineffective for failing to object to the four-level specific offense characteristic enhancement imposed at sentencing for an offense involving material portraying sadistic or masochistic conduct pursuant to U.S.S.G. §

2G2.2(b)(4). (Doc. no. 49, pp. 4-12.) He claims the video he distributed does not qualify for this enhancement, and the other CSAM he possessed thereafter is not relevant conduct for purposes of the distribution offense, and thus Mr. Usry's performance in failing to object to an inapplicable enhancement fell below an objective standard of reasonableness. (Id.; see also doc. no. 71, pp. 3-17.) Respondent contends Mr. Usry was not ineffective because (1) the distributed video at issue depicted sadistic or masochistic conduct, and (2) even if it did not, Petitioner engaged in conduct relevant to the distribution offense by possessing CSAM involving sadistic or masochistic material. (Doc. no. 59, pp. 9-21.) Upon careful review, the Court agrees with Respondent.

### i.    The Distributed Video Qualifies for the Enhancement Because It Depicts Sadomasochistic Conduct

On November 10, 2021, Petitioner sent a one-minute-thirty-two second video depicting "a white female pre-pubescent to early pubescent child masturbating with a black curling iron attachment, with her vagina exposed to the camera" over Kik. PSI ¶ 5; (see also doc. no. 47, pp. 12-13.) The video involved penetration. (Doc. no. 59-1, p. 9.) Petitioner's distribution of this video is the offense charged in Count One of the Indictment. (Doc. no. 1, p. 1.)

U.S.S.G. § 2G2.2(b)(4) provides a four-level offense level enhancement for offenses involving material portraying "(A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler." U.S.S.G. § 2G2.2(b)(4). The Guidelines do not define sadistic or masochistic conduct, and thus the Court construes these terms "according to their ordinary and natural meaning." United States v. Rogers, 989 F.3d 1255, 1261-62 (11th Cir. 2021) (quotations and citations omitted). Sadistic means deriving pleasure from inflicting pain or humiliation on others, and masochistic means deriving

pleasure from being the victim of pain or humiliation. *Merriam-Webster Dictionary* https://www.merriam-webster.com/dictionary (look up "sadistic" and "masochistic") (last visited Apr. 22, 2026); see also Rogers, 989 F.3d at 1262 (providing the dictionary definitions of sadistic and masochistic); United States v. Caro, 309 F.3d 1348, 1352 (11th Cir. 2002) (concluding "sadistic" for enhancement purposes includes sexual acts that are painful). Whether the CSAM portrays sadistic or masochistic conduct is a strictly objective inquiry. Rogers, 989 F.3d at 1262; see also United States v. Sanchez, 30 F.4th 1063, 1075 (11th Cir. 2022) (concluding "[a]n objective viewer could reasonably find that [inserting a toothbrush into child's vagina] was painful and humiliating").

In analyzing case law interpreting "sadistic conduct" under this sentencing enhancement, the Eleventh Circuit concluded that a sadistic image is one that "displays the subjection of a young child to a sexual act that would have to be painful . . . ." United States v. Hall, 312 F.3d 1250, 1261 (11th Cir. 2002) (citing United States v. Garrett, 190 F.3d 1220 (11th Cir.1999)). Under this test, a court does not need to determine if a minor's expression reveals he or she is experiencing pain if: "(1) the minor in the image is a young child and (2) the image portrays vaginal or anal penetration of a young child by an adult male . . . because such penetration would necessarily be painful." Hall, 312 F.3d at 1263. Further, the Eleventh Circuit has "repeatedly held that photographs depicting children being vaginally or anally penetrated, regardless of whether it is by adults or foreign objects, are sadistic." United States v. Young, 672 F. App'x 973, 973 (11th Cir. 2017) (*per curiam*) (citations omitted). The video distributed by Petitioner undoubtedly satisfies both elements.

First, the distributed CSAM depicts a young child because the victim is prepubescent or early pubescent. (Doc. no. 59-1, p. 9; doc. no. 47, p. 12; PSI ¶ 5.) While the exact age of

14

the victim is unknown, there is no bright-line age for application of the enhancement, as Petitioner contends there to be.  The Eleventh Circuit reasoned the sadistic image of "a child younger than twelve 'sufficiently' meets this standard," United States v. Cowan, No. 11–15989, 2012 WL 5834582, *6 (11th Cir. Nov. 19, 2012) (citations omitted), and in Young, concluded the "an image of a 13-year-old girl penetrating herself with a stick" met this standard.  672 F. App'x at 973.  Both Cowan and Young establish the relevant inquiry is simply whether the CSAM depicts a child.  Here, the video descriptions leave no doubt the minor victim is a child because she is early pubescent at most.  Second, the video satisfies the penetration element because it portrays the insertion of a curling iron into a minor's vagina.  Thus, because the video involves a young child penetrated by a foreign object, it portrays conduct that is necessarily painful, and thus, sadistic.

Because the enhancement applies, Mr. Usry was not ineffective for failing to raise this meritless objection.  See Davis v. United States, 696 F. App'x 431, 434 (11th Cir. 2017) (*per curiam*) ("Failing to make a meritless objection does not constitute deficient performance." (citing Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001))).

    **ii.**       **Even If the Distributed Video Does Not Qualify for the Enhancement, Petitioner's Possession of Other Sadistic and Masochistic CSAM Constitutes Relevant Conduct**

Nonetheless, even if the distributed video does not display sadomasochistic conduct, it is undisputed Petitioner possessed CSAM in October 2022 depicting sadomasochistic conduct, as well as the sexual abuse or exploitation of infants and toddlers.  PSI, ¶ 13; see also Sent. Tr. 12.  Petitioner contends this material, possessed eleventh months after the November 2021 distribution, is not relevant conduct that should be considered in calculating his offense level.  (Doc. no. 49, pp. 5-12; doc. no. 71, pp. 6-17.)  Respondent argues the CSAM is relevant

15

conduct because it was part of the "same course of conduct" and "common scheme or plan" as the distribution offense.  (Doc. no. 59, pp. 11-21.)

In calculating a defendant's total offense level under § 1B1.1, the court considers the offense of conviction and all relevant conduct.  U.S.S.G. § 1B1.1, cmt. 1(H).  "Relevant conduct under U.S.S.G. § 1B1.3 is not limited to the conduct charged in the indictment." United States v. Cote, 482 F. App'x 373, 375 (11th Cir. 2011) (*per curiam*).  The Sentencing Guidelines list four categories of relevant conduct.  See U.S.S.G. § 1B1.3.  Petitioner originally focused on § 1B1.3(a)(1), but Respondent appears to concede the CSAM does not fall under this category.  (Doc. no. 59, p. 12.)  Instead, Respondent argues the CSAM is relevant conduct under § 1B1.3(a)(2).  (Doc. no. 59, pp. 11-21.)

Section 1B1.3(a)(2) applies to "offenses of a character for which § 3D1.2(d) would require the grouping of multiple counts," which includes offenses under § 2G2.2.  See U.S.S.G. 1B1.3(a)(2); United States v. Holloway, 539 F. App'x 974, 976 (11th Cir. 2013) (*per curiam*) ("Section 2G2.2 . . . is the applicable offense guideline for an offense like [defendant's], involving the possession or distribution of child pornography . . . .").  Relevant conduct under § 1B1.3(a)(2) is "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. 1B1.3(a)(2).  Thus, the sadomasochistic CSAM Petitioner possessed in October 2022 qualifies as relevant conduct for Petitioner's distribution offense if it is either part of (a) a common scheme or plan, or (2) the same course of conduct.  It satisfies both.

### a.    Common scheme or plan

The commentary to § 1B1.3 explains offenses constituting a common scheme or plan "must be substantially connected to each other by at least one common factor, such as common

victims, common accomplices, common purpose, or similar modus operandi."  U.S.S.G. § 1B1.3, cmt. 5(B)(i).  In both his distribution of CSAM in November 2021 and possession of CSAM in October 2022, Petitioner's purpose was to fulfill his sexual interest in minors, and he accomplished this purpose in both instances by using his smartphone and social media applications to access images of child victims.  PSI ¶¶ 5, 7, 8, 9, 14.  Accordingly, because the October 2022 possession is substantially connected to Petitioner's November 2021 distribution, they are part of a common scheme or plan and thus constitute relevant conduct for sentencing purposes.

### b.      Same course of conduct

Even if offenses are not part of a common scheme or plan, they may "nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."  U.S.S.G. 1B1.3, cmt. 5(B)(ii).  Relevant factors include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  Id.  Finally, "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required."

Here, the distribution and possession offenses are sufficiently connected such that they are part of an ongoing series of offenses.  First, the distribution and possession offenses are remarkably similar.  Possession and distribution are intrinsically linked, as it is impossible to distribute CSAM without first possessing it.  Although Petitioner was ultimately convicted for one act of distribution, the November 2021 distribution was nonetheless part of an ongoing pattern of conduct in which Petitioner consumed CSAM on his smartphone by using social media applications.  Beyond the obvious similarity that both the November 2021 video and

17

October 2022 photos and videos depict CSAM, one video discovered in October 2022 involved remarkably comparable material to the November 2021 video.  Both videos involve white pre-pubescent to early pubescent minor females exposing their vaginas to the camera while masturbating.  PSI ¶¶ 5, 10.  Further, the large amount of CSAM discovered supports that the offenses occurred repeatedly and with significant frequency.

Petitioner argues the eleventh-month period between the distribution and possession offenses shows they are not sufficiently related conduct. (Doc. no. 49, p. 7; doc. no. 71, pp. 9-11.)  Petitioner also highlights his possession occurred after the distribution, not before or during it, and thus he contends the offenses cannot be substantially connected.  (Doc. no. 71, pp. 10-11.)  That the distribution came before the possession is irrelevant.  Indeed, nothing in U.S.S.G. 1B1.3 limits relevant conduct to acts committed before or during the offense of conviction.  Because Petitioner's CSAM possession is both part of a common scheme or plan and the same course of conduct as the distribution offense, it is relevant conduct under § 1B1.3(a)(2), meaning the four-level sadomasochistic enhancement under § 2G2(b)(4) was appropriate.  Thus, Mr. Usry again was not ineffective for failing to object to the enhancement because this objection would have been unsuccessful.

Petitioner relies on the Eleventh Circuit case United States v. Dunlap, and two Fifth Circuit cases, United States v. Fowler and United States v. Teuschler, to support his interpretation of relevant conduct and argument that Mr. Usry was ineffective for not objecting to the sadomasochistic enhancement.  (Doc. no. 49, pp. 7-9, 11; doc. no. 71, pp. 11-17.)  In Dunlap, the Eleventh Circuit vacated imposition of the enhancement where there was no evidence the defendant "possess[ed] the sadistic materials at the same time he transmitted the child pornography."  United States v. Dunlap, 279 F.3d 965, 967 (11th Cir. 2002).  The

18

Eleventh Circuit interpreted the relevant conduct provision under § 1B1.3(a)(1), which limits relevant conduct to acts and omissions "that occurred *during* the commission of the offense of conviction." Id. at 966 (citing U.S.S.G. § 1B1.3(a)(1)) (emphasis added). As Respondent notes, (doc. no. 59, pp. 16-18), Dunlap does not address § 1B1.3(a)(2), which in contrast does not require relevant conduct to have occurred during commission of the offense of conviction. Compare U.S.S.G. § 1B1.3(a)(1), with U.S.S.G. § 1B1(a)(2).

Petitioner points to several cases in which courts applied similar reasoning as that used in Dunlap concerning temporal proximity when analyzing § 1B1.3(a)(2). (See doc. no. 71, pp. 12-13 (citing Cote, 482 F. App'x at 375; Cowan, 2012 WL 5834582, at *7).) However, these cases are not particularly persuasive because, as discussed above, temporal proximity is only one of the relevant factors under § 1B1.3(a)(2). In other words, though temporal proximity is certainly a factor to be considered for both § 1B1.3(a)(1) and (a)(2), it is not an essential element. And, as explained above, here, other strong factors overcome the weaker temporal proximity. In sum, because Dunlap concerns a different relevant conduct provision, Mr. Usry was not ineffective for failing to raise this case or object to the enhancement in light of this case.

Nor do the Fifth Circuit cases help Petitioner's case. In Fowler, the Fifth Circuit concluded the possession of sadistic CSAM images was not relevant conduct because it was neither part of the defendant's plan to entice the minor victim nor sufficiently related. United States v. Fowler, 216 F.3d 459, 461-62 (5th Cir. 2000). However, in Dunlap, the Eleventh Circuit cited favorably the dissent in Fowler, in which Judge Garza argued the majority construed relevant conduct too narrowly such that it was not clearly erroneous for the district court to have applied the sadomasochistic enhancement. Dunlap, 279 F.3d at 966 n.3 (citing

Fowler, 216 F.3d at 463-65). The Fifth Circuit in Teuschler merely relied on Fowler as binding precedent in a similar case, also finding possession was not relevant conduct for an enticement offense. United States v. Teuschler, 689 F.3d 397, 399 (5th Cir. 2012).

Not only has the Eleventh Circuit embraced the dissent in Fowler, but there is also ample out of circuit precedent establishing the Fifth Circuit's narrow approach to relevant conduct is not the majority consensus. See, e.g., United States v. Sullivan, 414 F. App'x 477, 480 (3d Cir. 2011) (finding sadomasochistic enhancement based on relevant conduct applied where defendant's "possession of child pornography was quite similar to his distribution of it. . . . There was a single common offender and a similar modus operandi in [defendant's] use of his computer to obtain, possess, and then distribute the images" and a common "prurient interest in both possessing and distributing"); United States v. Dorvee, 616 F.3d 174, 180 (2d Cir. 2010) ("[W]e believe that the district court could have concluded that [defendant's] child pornography collection was "part of the same course of conduct or common scheme or plan as the offense of [distribution]."); United States v. McVey, 752 F.3d 606, 612 (4th Cir. 2014) ("[Defendant] admitted on the day of his arrest that he had possessed *and distributed* child pornography during the last ten years. This admission alone strongly suggests a single course of conduct." (emphasis in original)); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) ("[Defendant's] possession of sadomasochistic child pornography is properly included as uncharged but relevant conduct for the charged offense of transporting child pornography.").

For these reasons, Mr. Usry was not ineffective for "failing to bring this precedent to the Court's attention" because neither Dunlap nor the Fifth Circuit cases would have moved the needle in Petitioner's favor. (Doc. no. 71, p. 13.) .

20

### iii.    Mr. Usry's Strategy to Avoid Weak Guidelines Arguments Was Not Ineffective

As explained above, the distributed video met the sadomasochistic enhancement, and even if it did not, the CSAM Petitioner possessed in October 2022 was relevant conduct qualifying for this enhancement.  Thus, any objection to this enhancement would have necessarily failed.  Accordingly, Mr. Usry did not render ineffective assistance because "[f]ailing to make a meritless objection does not constitute deficient performance." Davis, 696 F. App'x at 434 (citing Chandler, 240 F.3d at 917); see also Hall v. United States, No. CIV.A. 13-0094-CG-C, 2014 WL 6972265, at *17 (S.D. Ala. Dec. 9, 2014) (explaining petitioner's argument that counsel should have objected to sentencing enhancements was "frivolous since the imposition of the sentencing enhancements was clearly appropriate").  Further, because any objection would have lacked merit, Petitioner does not demonstrate that even if Mr. Usry had objected to this enhancement, there was a reasonable probability the objection would have been successful.  See Delva v. United States, 851 F. App'x 148, 154 (11th Cir. 2021) (*per curiam*).

Nonetheless, even if Petitioner's interpretation of relevant conduct were correct, which it is not, Mr. Usry was still not ineffective for failing to raise this objection at sentencing.  In a sworn declaration, Mr. Usry avers he "discussed each and every one of [Petitioner's] concerns" with him prior to sentencing and they "agreed upon the strategy taken to forego filing potential objections, or to make specific arguments at sentencing." (Doc. no. 59-3, ¶ 2.)  At sentencing, Mr. Usry filed a Sentencing Memorandum and presented arguments on Petitioner's behalf at the hearing highlighting Petitioner's acceptance of responsibility and other positive traits.  (See Doc. no. 40; Sent. Tr.)  Petitioner fails to establish this choice of strategy was a choice no

competent counsel would have made.  See Strickland, 466 U.S. at 690.  Notably, "[c]ounsel is not required to present every nonfrivolous defense," and [g]ood advocacy requires winnowing out some arguments[] . . . to stress others."  Chandler, 218 F.3d at 1319 (internal quotations and citations omitted).  Based on Mr. Usry's declaration and the principles set forth in Chandler, Mr. Usry's strategy does not fall below an objective standard of reasonableness.  See also Section II.A.3 discussion infra.

For all the reasons set forth above, Petitioner fails to satisfy either prong of Strickland on this claim, and he is not entitled to relief.

### 2.    Petitioner Is Not Entitled to Relief on Ground 2 Because Mr. Usry Was Not Ineffective for Failing to Object to the Numerosity of Images Sentencing Enhancement

In Ground 2, Petitioner alleges Mr. Usry was ineffective for failing to object to the additional three-level numerosity of images enhancement for possessing over 600 images, as he argues he should have been subjected to a two-level, not five-level, increase.  (Doc. no. 49, pp. 13-23; doc. no. 71, pp. 17-21.)  Respondent argues Petitioner's possession of over 600 CSAM images was relevant conduct, and thus Mr. Usry was not ineffective for failing to pursue a meritless objection.  (Doc. no. 59, pp. 21-23.)  Upon careful consideration, the Court concludes Petitioner does not establish deficiency or prejudice.

U.S.S.G. § 2G2.2(b)(7) proscribes specific offense level enhancements based on the number of images involved in the offense.  The commentary explains each video is considered to have 75 images.  See U.S.S.G. § 2G2.2, cmt. 6(B)(ii).  Petitioner received a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(7)(D) based on 940 total images calculated from 565 still images and five videos.  PSI ¶ 14, 27,  Petitioner concedes he qualified for the two-level increase in § 2G2.2(b)(7)(A) for an offense involving at least ten images but fewer than

150 based on the single video, equaling 75 images under the Guidelines, he distributed in November 2021.  (Doc. no. 49, p. 14.)  He contests, however, receiving an additional three-level enhancement for an offense involving over 600 images.

As Petitioner was convicted of distribution, resolution of this dispute again requires analyzing whether his CSAM possession constitutes relevant conduct under § 1B1.3(a)(2). For all of the reasons explained above in Section II.A.1.ii *supra*, Petitioner's possession of CSAM in October 2022 is relevant conduct for his distribution offense.  See Cote, 482 F. App'x at 375-76 (concluding possession of over 2,700 CSAM images and distribution of almost 700 images was relevant conduct even though offense of conviction only involved ten images); United States v. Stevens, 305 F. App'x 574, 576 (11th Cir. 2008) (affirming image numerosity enhancement applied based on defendant's relevant conduct of possessing hundreds of CSAM images despite defendant being convicted of transmitting just two images). Although the Eleventh Circuit in Cote noted the acts comprising the relevant conduct "occurred around the same time as the charged offense," the Eleventh Circuit also reasoned, "These acts are similar in degree to the charged offense and are substantially connected to the charged offense given that one must first possess child pornography before one can transport it." Id. at 375.  As already noted, the temporal proximity of the offenses is only one factor in the analysis.  Thus, the discussion of the close timing between possession and distribution in Cote does not alter the instant conclusion.

Therefore, Mr. Usry again did not render deficient performance for failing to raise a meritless objection, and Petitioner fails to show a reasonable probability the Court would have declined to apply this enhancement had Mr. Usry raised this groundless objection.  Further,

even if the objection was not meritless, Petitioner also fails to show Mr. Usry's choice of strategy was patently unreasonable such that no competent counsel would have made it.

Accordingly, Petitioner fails to satisfy either prong of Strickland as to Ground 2, and he is not entitled to relief on this claim.

> **3.    Petitioner Is Not Entitled to Relief on Ground 3 Because He Fails to Establish No Competent Attorney Would Have Taken Mr. Usry's Approach at Sentencing**

In Ground 3, Petitioner argues Mr. Usry was ineffective for failing to argue for a sentence below the calculated 151-to-188-month Guideline range.  (Doc. no. 49, pp. 25-50; doc. no. 71, pp. 22-35.)  Specifically, Petitioner contends Mr. Usry should have raised at sentencing:  (1) § 2G2.2 lacks an empirical basis, and (2) there is a disparity between his sentence and similarly situated defendants.  (Doc. no. 49, pp. 25-50; doc. no. 71, pp. 22-35.)  In support, Petitioner cites various sources criticizing § 2G2.2 as overly harsh and untethered to empirical research, as well as to dozens of cases in which district courts imposed and Circuit courts upheld downward variances for CSAM offenses.  (Doc. no. 49, pp. 25-42; doc. no. 71, pp. 33-34.)  He also alleges an unfair disparity exists between his sentence and those other offenders received for non-production CSAM offenses.  (Doc. no. 49, 42-47.)  Ultimately, he argues Mr. Usry should have used these authorities and arguments at sentencing, and his failure to do so constitutes ineffective assistance.  (Id. at 48-50; see also doc. no. 71, pp. 28, 34-35.)

Respondent disagrees and argues Mr. Usry was not ineffective because his approach at sentencing was reasonable strategy, and Petitioner fails to show a reasonable probability he would have received a below-Guidelines sentence.  (See doc. no. 59, pp. 24-30.)  Respondent cites to Eleventh Circuit cases demonstrating arguments criticizing § 2G2.2 have been unsuccessful, and Petitioner's sentencing disparity-based argument suffers from various fatal

24

flaws.  (See id.)   Upon thorough review of the parties' arguments, the Court concludes Petitioner does not establish Mr. Usry performed deficiently.

First, Petitioner has not demonstrated Mr. Usry's performance at sentencing was objectively unreasonable.  "To demonstrate ineffective assistance of counsel at sentencing, [petitioner] must show under Strickland that his attorney's performance 'fell below an objective standard of reasonableness.'"  Dell v. United States, 710 F.3d 1267, 1281 (11th Cir. 2013) (quoting Strickland, 466 U.S. at 688)).   This analysis starts with the recognition, "strategic choices are 'virtually unchallengeable.'"  Provenzano, 148 F.3d at 1332.  Further, "[c]ounsel is not required to present every nonfrivolous defense."  Chandler, 218 F.3d at 1319. To show an attorney's choice of strategy is unreasonable, a petitioner must show no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690, 691; Puiatti, 732 F.3d at 1279-80; Waters, 46 F.3d at 1512; Devier, 3 F.3d at 1450.  "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (per curiam) (citations omitted).

Here, Petitioner fails to show Mr. Usry's sentencing strategy was so patently unreasonable no competent attorney would have chosen it.  At sentencing, Mr. Usry highlighted Petitioner's acceptance of responsibility and positive attributes in the Sentencing Memorandum and oral argument.  (See doc. nos. 40, 48.)  In a sworn declaration, Mr. Usry avers he "discussed each and every one of [Petitioner's] concerns" with him before sentencing, and the two "agreed upon the strategy taken to forego filing potential objections, or to make specific arguments at sentencing."  (Doc. no. 59-3, ¶ 2.)  Although Petitioner now advances alternative sentencing arguments in favor of a below-Guideline sentence that he contends Mr.

Usry should have instead raised, these arguments do not take away from the reasonableness of Mr. Usry's approach in arguing for a low-end Guideline sentence. Indeed, Petitioner himself concurred with this approach at the time. (Doc. no. 59-3, ¶ 2.)

Additionally, "it is quite difficult to establish that the omission of any particular argument resulted in ineffective assistance, although such a showing is possible if the argument or arguments neglected were stronger than the ones counsel actually offered." Dell, 710 F.3d at 1281. Here, the unraised arguments are not stronger than Mr. Usry's approach. As Respondent notes, the Eleventh Circuit has not endorsed criticisms of § 2G2.2 like the ones Petitioner raises. (See doc. no. 59, pp. 25-27 (citing cases casting doubt on § 2G2.2 criticisms).) Petitioner argues the case law has developed since the Eleventh Circuit decided some of these older cases, like United States v. Pugh, 515 F.3d 1179 (11th Cir. 2008), (doc. no. 71, pp. 24-25 (citing United States v. Yang, No. 1:23-cr-0258, 2024 WL 5202493, *3 n.24 (N.D. Ga. Dec. 20, 2024))), which in turn suggests arguments criticizing § 2G2.2 are now more persuasive. However, the Court cannot locate any definitive Eleventh Circuit authority ratifying this type of argument. In contrast, a recent, albeit unpublished, Eleventh Circuit decision rejected this type of policy-based argument in the direct appeal context. See United States v. Snow, No. 23-13447, 2025 WL 47705, at *3 (11th Cir. Jan. 8, 2025). Based on the foregoing, the case law reveals criticisms of § 2G2.2 are either still disfavored, or at best, of an unsettled persuasive strength. Petitioner appears to concede the evolving nature of this argument, as he acknowledges "the Circuits have not spoken with one voice" on the role of § 2G2.2 criticisms in sentencing. (Doc. no. 71, p. 26.)

Likewise, the sentencing disparity argument is not particularly strong. First, by considering the Guidelines in the first place, Judge Bowen "necessarily gave significant weight

and consideration to the need to avoid unwarranted disparities." Gall v. United States, 552 U.S. 38, 54 (2007). Indeed, at sentencing, Judge Bowen noted "[t]his is one of those times" where the Sentencing Guidelines are "very helpful and provide a measure of guidance and comfort to the Court." Sent. Tr. 14. Judge Bowen's specific reference to the helpfulness of the Guidelines explains why the argument for a below-Guideline sentence would not likely have proven successful. Though Petitioner contends § 2G2.2 is "fundamentally different" from other Guidelines provisions based on the above-described criticisms, he fails to demonstrate this counterargument would have undercut the Court's reliance on the Guidelines in light of the prevailing case law.

Moreover, though Petitioner presents numerous counterpoints rebutting Respondent's arguments about the flaws in his disparity-based argument, even assuming *arguendo* they are well-taken, (doc. no. 71, pp. 29-35), they do not render this argument significantly stronger than the one Mr. Usry presented. Arguments of questionable persuasive power are not stronger than the thorough, well-supported argument Mr. Usry raised at sentencing, which smartly highlighted Petitioner's genuine acceptance of responsibility and goals of bettering himself. (See generally doc. no. 40); Sent. Tr. This was a reasonable approach, and Petitioner fails to establish no competent attorney would have taken it. Indeed, Mr. Usry's choice of strategy is particularly clever in the face of Petitioner's commission of a crime of a "distasteful nature" involving "disgusting material." Sent. Tr. 14, 15. Thus, because Petitioner does not show Mr. Usry performed below an objective standard of reasonableness, he does not satisfy the Strickland deficiency prong.

27

Because the Court concludes Petitioner fails to establish deficiency, the Court need not address the prejudice prong. See Dell, 710 F.3d at 1282. Accordingly, Petitioner is not entitled to relief for Ground 3.

**B.      Respondent's Untimeliness Argument**

Because the Court concludes Petitioner's ineffective assistance of counsel claims fail on the merits, the Court declines to address Respondent's alternative argument that Petitioner's claims are time-barred because he drafted his motion with the assistance of legal counsel and thus was not entitled to application of the prison mailbox rule. (Doc. no. 59, pp. 30-33.)

**III.    CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2255 motion be **DENIED**, (doc. no. 49), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 22nd day of April, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA